**United States District Court for the**
**District of Columbia**

| | |
|---|---|
| George Freeman, an individual, ) | |
| 1047 Knox Bridge Road ) | Civil Action No. 1:16-cv-01615 |
| Forney, TX  75126 ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
|         v. ) | |
| ) | |
| Davita Vance-Cooks, Director, United States ) | |
| Government Publishing Office ) | |
| North Capitol St. and H St., N.W. ) | |
| Washington, D.C.  20401 ) | |
| ) | |
|     Defendant ) | |
| ) | |
|   Serve: ) | |
| ) | |
| Davita Vance-Cooks, Director, United States ) | |
| Government Publishing Office, ) | |
| North Capitol St. and H St., N.W. ) | |
| Washington, D.C.  20401 ) | |
| ) | |
| United States Attorney ) | |
| 555 4th St., NW ) | |
| Washington, DC  20001 ) | |
| ) | |
| U.S. Attorney General ) | |
| Department of Justice ) | |
| 950 Pennsylvania Ave., NW ) | |
| Washington, DC  20530 ) | |
| ) | |

**COMPLAINT FOR DISCRIMINATION IN EMPLOYMENT**
**IN VIOLATION OF TITLE VII**

Plaintiff, George Freeman, for his complaint against Davita Vance-Cooks, Director, United States Government Publishing Office ("GPO"), alleges:

1. This is an action for race discrimination and reprisal in violation of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e-3, 2000e-5 and 2000e-16.

## Jurisdiction and Venue

2. This court has jurisdiction over this action pursuant to 28 U.S.C. §1346, because it is an action against an agency of the United States, and 28 U.S.C. §1331, because it arises under the laws of the United States, particularly 42 U.S.C. §2000e-16.

3. Venue is proper in this Court, pursuant to §2000e-5(f)(3), or alternatively 28 U.S.C. §1402(b), because all of the events giving rise to the claim occurred within this district.

## Parties

4. Plaintiff George Freeman is an individual who resides in Kaufman County, Texas. Mr. Freeman was employed by GPO on or about January 27, 2013 until on or about February 22, 2014.

5. Davita Vance-Cooks is sued in her official capacity as Director, United States Government Publishing Office. The claims alleged herein arise out of the actions of responsible management officials of GPO under the Defendant, and/or by Defendant herself, as more specifically alleged herein or as shown by the evidence.

## Administrative Remedies

6. Plaintiff has exhausted his administrative remedies pursuant to Title VII, in that on or about August 27, 2013, he sought EEO counseling within 45 days of the most recent discrimination, and on or about October 24, 2013, he filed a formal administrative complaint and cooperated fully with the Equal Employment Opportunity procedure for federal employment. Plaintiff's formal complaint has been pending for more than 990 days. Plaintiff's election to proceed before an EEOC Administrative Judge was submitted on or before October 1, 2014;

thus, Plaintiff did not receive a final decision within the time limits prescribed by either 42 U.S.C. §2000e-16 or 29 C.F.R. §1614.109(i).

**Facts**

7. Plaintiff is an African American man, who was offered the position of Safety Officer by Defendant (Grade PG-14), through Lamont Vernon, a responsible management official of Defendant, in or about November, 2012. The position is sometimes referred to as "Safety and Occupational Health Manager."

8. Plaintiff was instead employed by Defendant in the position of Safety and Occupational Health Specialist (Grade PG-12), a position carrying a lower grade than that of Safety Officer (Grade PG-14).

9. Plaintiff accepted the position of Safety and Occupational Health Specialist, having been assured by Lamont Vernon that he would quickly be promoted to the position of Safety Officer once he relocated from Texas to the Washington, DC area.

10. Plaintiff is informed and believes, and based thereon alleges, that the management officials responsible for the discrimination alleged herein are Davita Vance-Cooks (the agency head), Lamont Vernon (Chief of Security for Defendant), Ginger Thomas and Lakeshia Rose (both managers within Defendant's Office of Human Capital), and others.

11. One or more of the responsible management officials informed Plaintiff, in about April, 2013, that he could not be promoted beyond the grade PG-12 because Defendant was subject to budgetary sequestration.

12. One or more of the responsible management officials later informed Plaintiff that Defendant could not pay Plaintiff at the grade PG-14 level because the necessary monies had been moved to Plant Operations.

13. Plaintiff learned on or about August 6, 2013 that Defendant promoted a Caucasian employee from the grade of PG-11/12 to the grade PG-14, effective on or about March 10, 2013 - the same time period during which Plaintiff had been told he could not be promoted because of budgetary constraints. Plaintiff was informed in or about mid-August, 2013, and on that basis believes, and therefore alleges, that Defendant at the time was making a practice of promoting white employees, and making black employees wait for promotions.

14. When Plaintiff first arrived to work for Defendant, Lamont Vernon (responsible management official), introduced Plaintiff to other personnel of Defendant as the new Safety Officer, but later, in the course of Plaintiff's EEO administrative complaint, denied that he even intended to promote Plaintiff into that position.  Mr. Vernon later asserted, in the course of Plaintiff's EEO administrative complaint, that he did not want to promote Plaintiff because Plaintiff in his view had numerous personality and performance problems, despite the fact that Mr. Vernon had been friends with Plaintiff for approximately 20 years and had urged Plaintiff to move from Texas to Washington, DC, to take the Safety Officer position.  These statements by Mr. Vernon in defense of his actions are false, and constitute additional evidence of pretext for Defendant's discriminatory treatment of Plaintiff.

15. Defendant, knowing that Plaintiff accepted employment with the expectation that he would be promoted to the Safety Officer position, in early August 2013 posted the Safety Officer position vacancy.

16. Plaintiff is informed and believes, and based thereon alleges, that DaVita Vance Cooks questioned Lamont Vernon about Plaintiff's background, then directed Mr. Vernon to organize the hiring of a Safety Officer so that Plaintiff would be unable to qualify, and ultimately hire another into the Safety Officer position.

17. Plaintiff initiated the informal complaint process with Defendant's EEO Office on or about August 27, 2013. This, and Plaintiff's other activities in pursuit of the EEO proceedings, constituted participatory protected activity.

18. The Safety Officer position was posted at the PG-14 grade level. Plaintiff applied for the PG-14 position, and initially was not placed on the certificate of qualified candidates.

19. Plaintiff's informal EEO complaint proceeded, and his initial EEO interview was conducted on September 5, 2013. In his interview, Plaintiff discussed the posting of the Safety Officer vacancy, and the role of Lakeshia Rose in finding him not qualified for the certification list for the vacancy.

20. Plaintiff was informed on or about September 13, 2013, by Bradley Jones (of Defendant's Office of Human Capital) who prepared the certificate, that this was an error, and that Plaintiff would be placed on the certificate. Mr. Jones then attempted to add Plaintiff to the certificate

21. On September 17, 2013, Plaintiff's EEO counselor interviewed Lamont Vernon, and on September 19, 2013, the counselor interviewed Lakeshia Rose. Plaintiff is informed and believes, and based thereon alleges, that Mr. Vernon and Ms. Rose were contacted regarding Plaintiff's EEO complaint and asked to arrange interviews between September 5 and 13, 2013.

22. The efforts of Mr. Jones to add Plaintiff to the certificate were overridden by Lakeshia Rose between September 13 and 23, 2013.

23. Plaintiff was highly qualified for the Safety Officer position.  Plaintiff received an honorable discharge from the Air Force in 2009, with the rank of Master Sergeant.  This was a managerial and supervisory position; while the rate of pay was directly comparable to a grade level GS-12 in civilian federal employment, the rate of pay and responsibilities of the positions were comparable to a grade level GS-13 or above.  Plaintiff served:

(a)  as a Propulsion Support Section Safety Manager from 2006 to 2007, a managerial and supervisory position, at a rate of pay comparable to a grade level GS-12

(b)  as a Propulsion Jet Engine Intermediate Maintenance Safety Manager from 2005 to 2006, a managerial and supervisory position, at a rate of pay comparable to a grade level GS-12

(c)  as a Sortie Generation Maintenance Safety Manager from 2003 to 2005, a managerial and supervisory position, at a rate of pay comparable to a grade level GS-12.

Plaintiff served as a civilian employee of the Army and Air Force, serving as:

(a)  Environmental and Occupational Safety and Health Manager to an Army Medical Brigade, at the grade of GS-11, from 2011 to 2013, and as a Safety Occupational and Health Manager for the Air Force at the grade level of GS-9 from 2007 to 2009 (at a rate of pay of $65,000 annually), and

(b)  Safety Occupational and Health Specialist for the Air Force, at the grade level of GS-9, from 2010 to 2011.

24. Despite the determination by Bradley Jones that Plaintiff was qualified and should be included on the certificate, Human Capital Manager Lakeshia Rose asserted that Plaintiff lacked the requisite qualifications because that Plaintiff had not been an "officer" in the military, his

6

<hr />

military experience was not equivalent to the PG-13 level, and Mr. Jones did not have the authority to reconsider Plaintiff for inclusion on the certificate.

25. The Civilian Grade Group chart (chart for converting military rank to civilian grade classification) used by Defendant (through Ms. Rose and others) did not give Plaintiff accurate or sufficient credit for his management experience in the military. According to the chart, Plaintiff's rank of Master Sergeant would be the equivalent of a GS-7 only, while plaintiff's pay at the rank was significantly higher than at the GS-7 grade. For example, the chart equates a Major with a civilian federal employee at the GS-12 grade level, suggesting (erroneously) that a Major in the Air Force would have no supervisory authority. The chart specifies that it is for use for Geneva Convention purposes only. Plaintiff is informed and believes, and based thereon alleges, that his rates of pay and supervisory and subject matter responsibilities in the military were well beyond the GS-12 grade level, that Defendant intentionally misapplied the chart in making Plaintiff's qualification determination, and that the other determinations by Ms. Rose for the purpose of excluding Plaintiff from the certification were arbitrary and irrational on their face, and that an intent to discriminate or retaliate can be inferred from these facts.

26. Despite Plaintiff's qualifications, Defendant did not select Plaintiff for the position, and instead continued to consider applications, and ultimately appointed Mr. Lonny Beal (Caucasian) to the position on or about March 10, 2014. Plaintiff resigned his employment as a Safety and Occupational Health Specialist effective on or about February 22, 2014, as a reasonable response to Defendant's discrimination, reprisal, and untruthfulness.

**Count 1**

(Discrimination Based on Race - Non-Promotion)

27. Plaintiff incorporates by reference the allegations of paragraphs 1 through 26 as though fully set forth here.

28. Plaintiff was denied a promotion which Defendant otherwise was able to grant him. Despite Defendant's assertion that promotions could not be granted because of budgetary constraints, a comparable promotion was granted to a Caucasian employee during the same time period.

29. Plaintiff is informed and believes, and based thereon alleges, that Defendant had determined to advance Caucasian employees over African American employees; that the decision was motivated by political considerations, but was nonetheless based on race despite the fact that the responsible management officials were of the same protected class as Plaintiff; and Plaintiff was therefore denied a promotion on the basis of his race. Plaintiff is informed and believes, and based thereon alleges, that Defendant's motive in denying Plaintiff the promotion can be inferred from the false and pretextual reasons advanced by Defendant, and by the fact that a Caucasian employee received a comparable promotion during the same time period.

30. Plaintiff has suffered injury as a proximate and direct result of Defendant's discrimination, including but not limited to the loss of earnings and benefits associated with the higher grade, and the loss of potential for advancement in his federal career.

**Count 2**

(Discrimination Based on Race - Non-Selection)

31. Plaintiff incorporates by reference the allegations of paragraphs 1 through 30 as though fully set forth here.

32.  Plaintiff was denied selection for the position of Safety Officer by being denied a position on the certification of qualified candidates.

33.  Defendant selected a candidate from outside of Defendant agency, not based on federal service.  The selectee was Caucasian.

34.  Plaintiff is informed and believes, and based thereon alleges, that he was qualified for the Safety Officer position, and that, despite his qualifications, Defendant continued to search for an applicant to fill the position, and even took steps to prevent Plaintiff from applying.  Thus, the selection of a Caucasian applicant from outside the federal government, instead of Plaintiff, constituted racial discrimination on its face.

35.  Plaintiff is informed and believes, and based thereon alleges, that the reasons Defendant has given for the selection were false and pretextual, and that Defendant's true motivation can reasonably be found to have been racial.

36.  Plaintiff has suffered injury as a proximate and direct result of Defendant's discrimination, including but not limited to the loss of earnings and benefits associated with the non-selection for the position of Safety Officer, and the loss of potential for advancement in his federal career.

**Count 3**

(Reprisal)

37.  Plaintiff incorporates by reference the allegations of paragraphs 1 through 36 as though fully set forth here.

38.  Plaintiff is informed and believes, and based thereon alleges, that Lamont Vernon and Lakeshia Rose, and therefore other members of Defendant's management, were informed of

the existence and nature of Plaintiff's EEO complaint between August 25 and September 13, 2013.

39. Plaintiff is informed and believes, and based thereon alleges, that the foregoing management officials made additional efforts to ensure that Plaintiff would not be listed on the certification of qualified candidates for the Safety Officer position, based substantially, at least in part, on an intention to retaliate against Plaintiff for participation in the EEO process.

40. Plaintiff has suffered injury as a proximate and direct result of Defendant's discrimination, including but not limited to the loss of earnings and benefits associated with the non-selection for the position of Safety Officer, and the loss of potential for advancement in his federal career.

WHEREFORE, Plaintiff prays:

1. For a mandatory injunction requiring that Defendant reinstate him, and appoint him to the position of Safety Officer, at a grade of at least PG-14, or comparable position;

2. For front pay representing the difference in earnings between the grade at which Plaintiff is first appointed, and the grade of PG-14, until such time as Plaintiff can be appointed to a PG-14 grade position;

3. For an injunction requiring that Defendant prevent discrimination and reprisal of the types to which Plaintiff has been subjected, and refrain from taking any adverse action against Plaintiff except for bona fide reasons which would not violate his rights to be free from discrimination;

4. For damages for lost earnings and benefits, according to proof at trial;

5. For compensatory damages according to proof at trial;

6. For reasonable attorneys' fees, interest, and costs of suit; and,

7. For such other relief as the Court deems just and proper.

   */ s/  Theodore S. Allison*   
Theodore S. Allison (D.C. Bar #441089)
Karr & Allison, P.C.
1250 Connecticut Ave., N.W., Suite 200
Washington, D.C.  20036
Telephone (202) 331-7600
*tsallison@karrallison.com*

Attorneys for Plaintiff

**Demand for Jury Trial**

Plaintiffs respectfully request a trial by jury on all claims stated herein which by law may be tried to a jury, pursuant to the Constitution and Statutes of the United States, including but not limited to 42 U.S.C. §1981a.

    */ s/  Theodore S. Allison*
Theodore S. Allison (D.C. Bar #441089)
Karr & Allison, PC
1250 Connecticut Ave., N.W., Suite 200
Washington, D.C.  20036
Telephone (202) 331-7600
*tsallison@karrallison.com*

Attorneys for Plaintiff